UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIS MILLER,

        Plaintiff,

v.                                      Case No. 3:21-cv-832-BJD-MCR

SGT. WILLIS, et al.,

        Defendants.

_____

## ORDER

### I. Status

Plaintiff, Willis Miller, an inmate of the Florida Department of Corrections (FDC), is proceeding *pro se* and *in forma pauperis* on an amended complaint for the violation of civil rights under 42 U.S.C. § 1983 (Doc. 12; Am. Compl.) with exhibits (Docs. 1-2–1-13; Compl. Ex. 1–12). Plaintiff alleges Defendants, five officers at Florida State Prison (FSP), used unnecessary force against him on February 9, 2018, causing serious injuries that required treatment at an outside hospital.[1] *See* Am. Compl. at 10–12. He seeks damages, including punitive, and injunctive relief. *Id.* at 13–14.

---

[1] Plaintiff's claims against a sixth Defendant, identified in the complaint as "Bassermorn," but later identified as "Bosserman," were dismissed for Plaintiff's failure to timely serve this Defendant. *See* Order (Doc. 66). Defendant Walin is identified by the last name "Gerow" in the amended complaint. Plaintiff later corrected this Defendant's name. *See* Order (Doc. 42).

Before the Court is Defendants' motion for summary judgment (Doc. 98; Def. Mot.) with an exhibit (Doc. 98-1; Def. Ex.). Plaintiff opposes the motion (Doc. 99; Pl. Resp.) with his own exhibits (Docs. 99-1–99-10).[2]

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no

---

[2] Plaintiff subsequently filed other documents, exhibits, and notices, without seeking leave to supplement his response or without seeking any discernible relief (Docs. 100, 103, 104, 105, 106). As such, the Court does not consider them but notes that most documents filed in supplement to his response are duplicative of other documents already on the docket or of facts and arguments already considered.

genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

When the moving party has discharged its burden, the non-moving party must point to evidence in the record to demonstrate a genuine dispute of material fact. *Id.* Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing [the motion]." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (citing *Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571, 1578 (11th Cir. 1994)).

### III. Facts

### A. Plaintiff's Verified Complaint Allegations[3]

In his amended complaint, Plaintiff alleges the relevant events began when Defendant Willis and another officer were escorting him from his cell to a disciplinary report (DR) hearing. *See* Am. Compl. at 7. According to Plaintiff, after he was fully shackled and removed from his cell, Defendant Willis began "taunting" him, saying, "Yeah, I heard you were a 'cho-mo' [child molester], so you better hope they throw your [DR] out, because if you stay on this wing, we're gonna have problems." *Id.* Plaintiff admittedly stopped walking and sat on the floor because he feared for his safety. *Id.* at 8. Defendant Willis and the other officer then "started to 'drag' and 'carry' Plaintiff back to his assigned cell," without first contacting mental health, as Plaintiff claims is required under the Florida Administrative Code (FAC) before an officer uses force on an inmate with a mental health grade of S3. *Id.* at 8–9.[4]

Plaintiff further alleges that, after he was back inside his cell, Defendant Willis "placed both knees on [his] back . . . and then proceeded to slap [him] against his . . . face multiple times." *Id.* at 9. Defendant Willis allegedly called

---

[3] A plaintiff's allegations in his verified complaint are to be given the same weight as an affidavit. *See Stallworth v. Tyson*, 578 F. App'x 948, 950 (11th Cir. 2014).

[4] Plaintiff also asserts Defendant Willis and the other officer violated other provisions of the FAC when they "drag[ged]" him back to his cell. *See* Am. Compl. at 8–9.

for assistance, and Defendants Dykes, Walin, Lavoie, and Halsey arrived but instead of "interven[ing] [to] stop or prevent further injury," they "began punching repeat[ed]ly . . . Plaintiff's upper body." *Id.* at 10–11. Thereafter, Defendant Willis allegedly "began kicking . . . Plaintiff . . . in the torso and head area [and] then returned to punching [him] in the fac[e]," while the other Defendants watched. *Id.* at 11.

Prison medical records reflect that Plaintiff suffered a hematoma to the right side of his forehead, swelling around his left eye, and various lacerations that caused "severe bleeding" and possibly needed sutures, necessitating a trip to an outside hospital.[5] *See* Compl. Ex. 5 at 2–3. At the hospital, Plaintiff learned he also sustained a fractured nasal bone and fractured orbital floor. *See* Compl. Ex. 3 at 2–3, 5. *See also* Compl. Ex. 7 at 4–5. Plaintiff provides other medical and grievance records documenting or reporting additional injuries he learned of after-the-fact, which he attributes to the February 9, 2018 use-of-force incident, including back pain, *see* Compl. Ex. 7 at 4; Compl. Ex. 10 at 8–9, and pain and blurry vision in the left eye, *see* Compl. Ex. 8 at 2; Compl. Ex. 10 at 11.

---

[5] A force report provided by Defendants explains that Plaintiff was sent to an outside hospital because the incident occurred at 5:30 a.m. when no doctor was on duty. *See* Def. Ex. at 28.

Plaintiff offers the affidavits of two inmates: Michael Love; and Bryant Williams. *See* Compl. Ex. 4; Compl. Ex. 11. Inmate Love contends he "witness[ed] . . . a[n] unn[ec]essary use of force" against Plaintiff on February 9, 2018. *See* Compl. Ex. 4 at 2. According to inmate Love, Defendant Dykes and other unidentified officers "jumped on [Plaintiff] … in front of his cell." *Id.* Love contends the officers "beat" Plaintiff and tried to drag him inside his cell while "he was unconscious." *Id.* Inmate Bryant's affidavit appears to address other issues or incidents involving Plaintiff—he does not aver having witnessed the incident that is the basis of Plaintiff's complaint, nor does he say he has any independent knowledge about the incident. *See* Compl. Ex. 11 at 2.

**B. Defendants' Position**

Defendants provide use-of-force reports, which relay a narrative that differs starkly from Plaintiff's. *See* Def. Ex. at 2–3, 10–13. The only part of Defendants' narrative that aligns with Plaintiff's is that Plaintiff sat on the floor when Defendant Willis and another officer were escorting him to a DR hearing. *See id.* at 2, 10, 12. Defendants Willis and  Officer Jonathon Carnes report that Plaintiff refused orders to stand and walk, so they "utilized [a] two man carry technique [to] carr[y] [Plaintiff] back inside his [cell]." *Id.* at 10, 12. They both report the following subsequent events, taken from Defendant Willis's force report:

6

> Upon entering the cell, [Plaintiff] spat on [Defendant
> Willis] striking [him] in the upper torso area and then
> head butted [Defendant Willis] in the lower left chin
> area. [Defendant Willis] maintained [his] grasp of
> [Plaintiff], and with the assistance of Officer Carnes …
> forced [Plaintiff] face down to the cell floor. …
> [Plaintiff] struck his forehead and the side of his face
> on the floor. [Plaintiff] continued to be resistant by
> twisting and contorting his body in an attempt to
> break [Defendant Willis's] grasp. Officer Carnes and
> [Defendant Willis] released [their] grip of [Plaintiff]
> and attempted to exit the cell. As [they] attempted to
> exit the cell, [Plaintiff] jumped up from the cell floor
> and charged at [Defendant Willis], and again head
> butted [him] striking [him] in the facial area.
> [Defendant Willis] redirected [Plaintiff] toward the
> back of the cell and grasped him by his upper left arm
> with both hands, and with the assistance of Officer
> Carnes … forced [Plaintiff] to the bunk face down
> landing between the cell wall and corner of the bunk.
> … [Plaintiff] struck his forehead and mouth on the
> edge of the bunk.

*Id.* at 10–13. Defendant Willis's report notes that the "[i]ncident [was] captured on fixed wing and/or handheld video," but Defendants provide no video evidence in support of their motion. *See id.* at 10. *See also generally* Def. Mot.

Other officers arrived after Plaintiff struck his face on the edge of his bunk, at which time Defendant Willis and Officer Carnes were able to leave the cell without using any additional force. *See* Def. Ex. at 11, 13. Defendants Lavoie, Walin, and Dykes deny having witnessed the events that occurred inside Plaintiff's cell, and they deny having used force against Plaintiff other than to assist him to a gurney to be taken to medical. *See id.* at 14, 16, 22.

Defendant Dykes reports he "witnessed [Defendant] Willis and Officer Jonathon Carnes utilize a two many carry to carry [Plaintiff] . . . to his assigned cell . . . due to him refusing all orders to walk." *Id.* at 22. Defendants Lavoie and Walin report that they arrived after Defendant Willis and Officer Carnes exited Plaintiff's cell, when Plaintiff was "compl[ying]" with officers' orders. *Id.* at 14, 16. They report that Plaintiff "refused to stand and walk," so they, along with two other officers, "four man carried [Plaintiff] to the second floor quarterdeck," where a gurney was waiting to transport him to the medical unit. *Id.*

### C. Plaintiff's Response[6]

Plaintiff contends in his response that all officers who completed a force report are "telling a lie." *See* Pl. Resp. at 6. He claims he "never refused to comply with any officer[s'] order, and he repeats that he sat on the floor initially because Defendant Willis threatened him. *Id.* at 7–9. He denies having head-butted or spat on anyone. *Id.* at 9.

### IV. Legal Analysis & Conclusions of Law

Defendants invoke qualified immunity, arguing the undisputed facts show that officers were justified in using force to subdue Plaintiff because

---

[6] The exhibits Plaintiff provides in support of his response are mostly duplicative of many he filed with his amended complaint or of those Defendants provide with their motion.

Plaintiff refused to comply with officers' commands and attacked Defendant Willis. *See* Def. Mot. at 1–3, 10–11, 21. They also assert Plaintiff's request for punitive damages is statutorily barred. *Id.* at 1, 11.

### A. Qualified Immunity

Prison officials sued in their individual capacities are "entitled to qualified immunity for [their] discretionary actions unless [they] violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009)). Qualified immunity allows government employees to exercise their official duties without fear of facing personal liability. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The doctrine protects all but the plainly incompetent or those who knowingly violate an inmate's constitutional rights. *Id.* In other words, even if a prison official makes a decision that is later found to be constitutionally deficient, the official is entitled to qualified immunity if the decision was based on a reasonable misapprehension of the law. *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Upon invoking qualified immunity, a defendant bears the initial burden to demonstrate he was performing discretionary duties at the relevant times. *Alcocer*, 906 F.3d at 951. Plaintiff does not dispute that Defendants were acting

within the scope of their discretionary duties as corrections officers when the incident occurred. As such, the burden shifts to Plaintiff, who must point to facts that, accepted as true, demonstrate each Defendant violated a constitutional right that was clearly established at the time. *Id.* ("Because § 1983 'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation,' each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

The Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, or the infliction of pain totally without penological justification." *Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987). At the same time, it is well understood that prison guards, who are charged with maintaining order and protecting inmates and staff, may use force when necessary. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991). Accordingly, courts must balance an inmate's right to be free from cruel and unusual punishment with a prison official's obligation to ensure a safe and secure institution. *Ort*, 813 F.2d at 321–22.

An inmate against whom force is used to restore order demonstrates an Eighth Amendment violation "*only* if the measure taken 'inflicted unnecessary and wanton pain and suffering' caused by force used 'maliciously and

sadistically for the very purpose of causing harm.'" *Williams*, 943 F.2d at 1575 (emphasis is original). Whether an officer used more force than necessary to quell a disturbance or regain control of a prisoner requires courts to consider various factors, including the need for force, the extent of force used in relation to the prisoner's conduct, the threat of harm the prisoner posed to staff and inmates, whether the officer tried to "temper the severity of a forceful response," and the injuries inflicted. *See id.*; *Whitley*, 475 U.S. at 321 ("*Whitley* factors"). *See also Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002). In considering the *Whitley* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security." *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). The Supreme Court has stressed,

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322. Nonetheless, if an officer reasonably uses force to quell a disturbance, the force should cease once the behavior giving rise to the need for force abates. *Ort*, 813 F.2d at 324. When an officer uses excessive force against an inmate, officers who are present and can intervene but do not can

11

be held liable. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007) ("The law of this circuit is that an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (internal quotation marks omitted)).

In his amended complaint, Plaintiff complains that the following conduct constituted excessive force: Defendant Willis (and another officer) carried or dragged him to his cell after he sat on the floor; Defendant Willis placed both knees on his back and slapped him in the face; and all Defendants "severely beat[]" him while he was fully restrained inside his cell, including punching him, kicking him, and stomping on him, or failed to intervene. *See* Am. Compl. at 8–12. *See also* Compl. Ex. 4 at 2.

With respect to the first use-of-force involving only Defendant Willis (i.e., the two-man carry), the parties do not dispute that Plaintiff sat on the floor when he was on his way to a DR hearing and that Defendant Willis and another officer carried or "drag[ged]" him back to his cell. *See* Am. Compl. at 7; Def. Ex. at 10, 12. Even though Plaintiff denies having disobeyed any officers' orders, *see* Pl. Resp. at 7, he concedes that he sat on the floor instead of walking to the DR hearing, *see* Am. Compl. at 7. Regardless of the reason Plaintiff refused to walk and sat down instead, such conduct by a prisoner is tantamount to disobeying a lawful order.

12

Affording Defendant Willis "a wide range of deference" in maintaining prison security, the *Whitley* factors balance in his favor based on this conduct: there was a need to use some force given Plaintiff defied direct or indirect orders to walk; the extent of force used was minimal and appeared to have been tempered; objectively, Plaintiff's conduct does not appear to have posed harm to himself, staff, or other inmates, but the Court accepts that having a disobedient inmate sitting on the floor of a prison wing could cause security concerns; and Plaintiff sustained no injuries from the two-man carry.

Under the undisputed facts, the Court finds Defendant Willis's use of a two-many carry does not amount to excessive force in violation of the Eighth Amendment, and he is, therefore, entitled to qualified immunity on this portion of the claim. This is so even if Defendant Willis violated provisions of the FAC. *See, e.g.*, *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995) (explaining that prison regulations do not confer rights on inmates but guide corrections officials in carrying out their duties); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("[Section] 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, *i.e.,* rights independently 'secured by the Constitution and laws' of the United States.").

Although the Court finds Defendant Willis was justified in carrying Plaintiff back to his cell, the parties tell sharply conflicting stories about what happened thereafter. Through a verified amended complaint and at least one

witness statement, Plaintiff alleges Defendants Willis, Dykes, Walin, Lavoie, and Halsey gratuitously beat or "jumped" him or watched him being beaten without intervening. On the other hand, Defendants claim Plaintiff spat on and twice head-butted Defendant Willis, which prompted a reactionary use-of-force by Defendant Willis that was not witnessed by any other Defendant.

When two parties' stories conflict, neither of which is blatantly contradicted by indisputable evidence, a district court may not make credibility determinations in favor of one party over the other. *See Sears v. Roberts*, 922 F.3d 1199, 1206, 1208–09 (11th Cir. 2019) (reversing the district court's entry of summary judgment in favor of the officer-defendants because the officers' documentary evidence, including disciplinary reports and affidavits, consisted of "various forms of their own testimony," which directly contradicted Plaintiff's sworn allegations). Defendants offer no indisputable evidence, such as video footage, that blatantly contradicts Plaintiff's account of the incident, which the Court must accept as true. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (explaining a district court considering a motion for summary judgment "must view all evidence and make all reasonable inferences" in the non-movant's favor). The record presents "a classic swearing match, which is the stuff of which jury trials are made." *Sears*, 922 F.3d at 1208 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)).

Because Plaintiff asserts facts that, accepted as true, amount to an Eighth Amendment violation under clearly established law, Defendants are not entitled to qualified immunity. *See Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008) ("'[T]here is no room for qualified immunity' in . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful." (quoting *Johnson v. Breeden,* 280 F.3d 1308, 1321–22 (11th Cir. 2002))), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). *See also Skrtich*, 280 F.3d at 1302, 1304–05 (holding the district court properly denied qualified immunity to officers who collectively participated in or witnessed "a severe beating [administered for] no other purpose than [to] inflict[] pain").

## B. Punitive Damages

Defendants argue that 18 U.S.C. § 3626(a)(1)(A) precludes an award of punitive damages. *See* Def. Mot. at 11–12. Their argument, however, is unconvincing. On the one hand, they assert, "Punitive damages are statutorily barred," citing § 3626(a)(1)(A), but on the other hand, they concede that "[§] 3626(a)(1)(A) *applies* to punitive damages" and that the Eleventh Circuit has not interpreted this section to "bar punitive damages." *See id.* at 11, 12, 14–15 (emphasis added) (citing *Johnson v. Breeden*, 280 F.3d 1308, 1325–26 (11th

Cir. 2002), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015)).[7]

Neither the statutory text nor the Eleventh Circuit's *Johnson* opinion supports Defendants' argument. The relevant statutory provision does not bar any relief but rather sets forth strict parameters under which prospective relief may be awarded in a prison conditions civil rights case. It provides:

> (1) Prospective relief. – (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). In *Johnson*, the Eleventh Circuit held that punitive damages constitute "prospective relief" and, as such, any punitive damages award must satisfy the strict parameters delineated in § 3626(a)(1)(A). *See* 280 F.3d at 1325 ("Because Congress has provided that punitive damages are prospective relief, we must give the requirements of § 3626(a)(1)(A) some

---

[7] Defendants state in a footnote that they raise the argument "to preserve the issue for appellate review." *See* Def. Mot. at 14 n.1.

meaning in the context of punitive damages."). Finding Defendants' argument unconvincing, their motion will be denied with respect to this argument.

Accordingly, it is now

**ORDERED:**

1.      Defendants' motion for summary judgment (Doc. 98) is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** only to the extent that Defendant Willis is entitled to qualified immunity on the claim that he used excessive force when he two-man carried Plaintiff to his cell for Plaintiff's refusal to walk. The motion is **DENIED** in all other respects.

2.      This case is in a posture to proceed to settlement conference and, if settlement negotiations fail, to trial. The Court finds Plaintiff is entitled to the appointment of counsel to assist him. *See* 28 U.S.C. § 1915(e)(1); *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). Thus, this case is **REFERRED** to the Jacksonville Division Civil Pro Bono Appointment Program so the designated deputy clerk of the Court may seek counsel to represent Plaintiff. The Court encourages the parties to attempt to settle the case privately in the meantime. If settlement negotiations are successful, the parties shall immediately notify the Court.

**DONE AND ORDERED** at Jacksonville, Florida, this 31st day of May

2024.

                                           BRIAN J. DAVIS
                                United States District Judge

Jax-6
c:
Willis Miller
Counsel of Record